J^FITZSIMMONS, J.
The City Court of Houma, acting under its juvenile jurisdiction, found three employees of the State of Louisiana, Department of Social Services, Office of Community Services (OCS), guilty of contempt of court. See La. Ch.C. arts. 302-303. OCS appealed. We reverse.

FACTUAL AND PROCEDURAL BACKGROUND

By a judgment signed on January 29, 2003, the juvenile court adjudged the minor child, M.A.A., to be a “child in need of care.” See La. Ch.C. art. 604 & 601, et seq. Custody of the child was awarded to OCS. Although M.A.A. had been admitted to Southeast Louisiana Hospital; other, more appropriate placements were discussed during a hearing on January 15, 2003. OCS stated that finding a new placement for M.A.A. had been difficult, but finally a placement in a Harmony Center group home named Longfellow was secured. The OCS, however, was concerned about the range of counseling available at Longfellow and notified the court that M.A.A. was eligible for a more intensive program with specialized counseling. Concerns were also raised about placing M.A.A. in public school while at Longfellow, and the need to avoid contact with an older brother in another Harmony home. OCS explained to the court that although M.A.A. was on waiting lists for more restrictive, intensive programs, including New Directions, located in Covington, Louisiana, none were immediately available. The possibility that M.A.A. would do well at Longfellow, and not require a transfer to a more intensive program, was discussed. The judge asked how long M.A.A. would be on the list, and OCS replied that he would “stay on the list until the list is worked.” OCS wanted to have a placement option available if the stay at Longfellow was disrupted. A status or case review hearing was set for February 19, 2003.
At the February 19, 2003 hearing, the representative from the Longfellow home reported that M.A.A. was doing well. Longfellow also agreed that some ^additional therapy, outside of the normal counseling done at Longfellow, would be provided. At the end of the hearing, the judge stated that the placement was appropriate. A judgment specifically finding the placement at Longfellow to be the “most appropriate, least restrictive available” was signed on March 10, 2003. However, before the judgment was signed, an opening at New Directions became available. OCS transferred M.A.A. to New Directions on February 26, 2003.
Another status hearing was held on March 28, 2003. At the hearing, the judge *44 stated that he was puzzled by the change in placement to New Directions made after Longfellow was found to be the most appropriate, least restrictive placement, and especially in light of reports of M.A.A.’s good progress at Longfellow. OCS opined that New Directions, unlike Longfellow, offered more specialized counseling better suited to M.A.A.’s problems as a victim of sexual abuse, and as an admitted sexual perpetrator himself. The needed specialized therapy was part of the overall New Directions program and would not create the additional costs, and depletion of the OCS budget, that such individual therapy would generate at Longfellow. Also, once a child was accepted, New Directions had a policy that tolerated more disruptions and problems than Longfellow. Because OCS had previously experienced difficulty in placing M.A.A., OCS felt that a stronger, no-rejection policy would offer more long-term stability. The judge took the matter under advisement. By an order signed on April 8, 2008, the judge found the “placement at New Directions is not the least restrictive as required by the Children’s Code.”
In September of 2003, M.A.A. filed an objection to the placement at New Directions. A review hearing was held on September 10, 2003, but the judge did not see any reason to proceed with the hearing until the appellate court ruled on OCS’s appeal of the April 8, 2003 judgment. Finding that the terms of the April 8, 2003 judgment were not certain or definite, and granted no relief, this court held |4the judgment was not a final, appealable one. The appeal of the April judgment, docket number 2003 CJ 1615, was dismissed on November 7, 2003. On November 12th, the court, on its own motion, filed a rule to show cause why three specific OCS employees: Stephanie Kenney-Gomez, M.A.A.’s case manager; Gayle Lewis, the District Manager; and Michael Pooley, the Regional Administrator;[1] should not be held in contempt of court for “willful disobedience in not complying in all respects with the case plan approved by this court per judgment dated February, 19, 2003.” In the rule, the judge asserted that the child was not a sexual perpetrator, that New Directions was not an appropriate placement for the child, and that the child was in compliance with the case plan while in Longfellow. Thus, the court saw no valid basis for the transfer to New Directions. A show cause hearing was held on November 21, 2003. At the hearing on the rule to show cause, all three employees testified that they would not intentionally disobey an order or a judgment of the court.
By judgment signed December 3, 2003, the trial court found all three to be in contempt for “failure ... to comply with the case plan approved by this court per judgment rendered in Open Court on February 19, 2003, and signed March 10, 2003.” The court also held that the “contempt persisted from approximately February 26, 2003 to March 28, 2003 and the decision ... signed April 8, 2003,” through the date of the judgment, December 3, 2003, and until they comply. The three employees were sentenced to incarceration and community service, and ordered to “individually submit a report to appropriate state and federal agencies .... ” The matter was referred to OCS for administrative reprimand and | ¡¡sanctions. A motion for appeal of the contempt judgment was denied by the court on December 9, 2003.
According to court minutes for January 21, 2004, the judge discussed recommenda *45 tions from Southeast Louisiana Hospital and Longfellow that M.A.A. be required to finish the program at New Directions before being transferred to another facility. Although the court maintained its belief that New Directions was inappropriate, the court stated that it would not “argue with Dr. Rovin if he [felt] that New Directions is appropriate for a period of stabilization.” Thus, approximately six weeks after the judgment holding the three employees in contempt until they complied, presumably by transferring the child back to Longfellow,. the court continued the child’s placement in the New Directions program.
On February 4, 2004, this court denied a writ, number 2003 CW 2841, filed by OCS. OCS had asked for a stay, reinstatement of their suspensive appeal, or consideration of the validity of the contempt judgment. In its denial, this court stated that the court’s finding in the civil contempt proceeding was -not manifestly erroneous.[2] Sometime prior to March 9, 2004, M.A.A. was returned to a Harmony House home. However, the court refused to rescind or vacate the. contempt sanctions. On April 7, 2004, the Louisiana Supreme Court found that the contempt proceeding was criminal in nature, and ordered this court to grant OCS an appeal. The appeal was docketed, and the record was ordered to be supplemented with the prior filings and ruling on writs.

APPLICABLE LEGAL PRECEPTS

Louisiana Children’s Code article 672(A) provides:
| ([Whenever custody of a child is assigned to the Department of Social Services, the child shall be assigned to the custody of the department rather than to a particular placement setting. The department shall have sole authority over the placement within its resources and sole authority over the allocation of other available resources within the department for children judicially committed to its custody.
Thus, while the court may choose to recommend alternative placements, the Department of Social Services may reject that recommendation, and the department is not required “to pay for such care and treatment.” La. Ch.C., Chapter 14, Disposition, 2001 Authors’- Notes, citing State ex rel. Sapia, 397 So.2d 469 (La.1981); see State ex rel. L.C.B., 01-2441, pp. 7-10 (La.1/15/02), 805 So.2d 159, 163-165; State ex rel. C.J.K., 00-2375 & 00-2504, pp. 12-13 (La.11/28/00), 774 So.2d 107, 116-17; La. Ch.C. art. 672, 2003 Authors’ Notes; see also State ex rel. of L.A.H., 02-1867, p. 4 (La.App. 1 Cir. 12/20/02), 836 So.2d 447, 449 (interpreting La. Ch.C. Art. 908 A, a similar provision governing delinquent juveniles). However, article 672 must be read in relation to the other articles governing child in need of care proceedings.
Article 673 provides that once a child enters the custody of a child care agency, the custodian shall develop a case plan detailing the custodian’s efforts toward achieving a permanent placement for the child within a specified time period. Article 677 provides for judicial review of the case plan as follows:
‘A. At the disposition hearing, the court shall consider the content or implementation of the case plan and any response filed concerning it. At any other hearing held subsequent to the filing of the case plan, on its own motion *46 or upon motion of any party for good cause shown, the court may consider the content or implementation of the case plan or of any response filed concerning it.
B. If no party files a written response objecting to the case plan and the court finds the plan protects the health and safety of the child and is in the best interest of the child, the court shall render an order approving the plan.
C. If the court does not approve the case plan, it shall enter specific written reasons for finding that the plan does not protect the health and safety of the child or is otherwise not in the best interest of the child.’
Similarly, Articles 688 and 690 provide that the custodial agency shall file a case review report with the court which shall 17review the status of the child and address, among other things, the continuing necessity for and appropriateness of the child’s placement, and the extent of compliance with the case plan. Article 692 provides for periodic review hearings by the court. Article 700 provides that at the conclusion of the case review hearing, the court may:
‘(1) Approve the plan as consistent with the health and safety of the child and order compliance by all parties.
[[Image here]]
(2) Find that the case plan is not appropriate, in whole or in part, based on the evidence presented at the contradictory hearing and order the department to revise the case plan accordingly.’
The 1991 Comment to art. 700 provides that this article is ‘intended to clarify the role of the court vis-a-vis the role of the department as set forth in Article 672.’ The Comment goes on to explain that ‘[t]he court is specifically entitled to accept or reject the department’s plan, based on the evidence presented, but is not authorized to revise the plan itself. The department remains responsible for revision of the case plan.’
Finally, La. Ch.C. art. 702 provides that the court shall conduct a permanency hearing within a specified period of time and shall determine the permanent plan for the child that is most appropriate and in the best interest of the child in accordance with specified priorities of placements. Additionally, art. 702 provides that the court shall determine whether the department has made reasonable efforts to finalize the child’s placement in an alternative safe and permanent home in accordance with the child’s permanent plan. The 1999 Comment to this article explains that the purpose of the permanency hearings is to ‘provide for judicial review and oversight of department planning and deeision[-]making on behalf of children who have been removed from their parents’ custody.’
When reading all of these provisions as a whole, it becomes clear that the legislature has attempted to achieve a delicate balance between the broad authority of review reserved to the courts and the specific powers given to OCS. The foregoing provisions define the juvenile court’s overarching role in supervising and reviewing the progression of the child’s case. These provisions dictate that the juvenile court retains the ultimate authority over a child’s placement. See State in the Interest of Jennifer W., 485 So.2d 504, 506 (La.1986) and [State in the Interest of] Sapia, 397 So.2d 469, ... 474 (both recognizing that statutes which gave the courts the authority to review the status of children placed in the custody of the Department allowed the courts to have the ultimate authority over a child’s placement). *47 Hoivever, pursuant to Article 672(A), the Department has the sole authority to determine the specific placements of children committed to its custody. Therefore, under the scheme imposed by these provisions, the court may review the case plan and either approve the plan or reject it and order the Department to revise the plan \ ^accordingly. It cannot, hoivever, revise the plan itself or order any particular placements of children adjudicated in need of care and placed in the Department’s custody.
State ex rel. L.C.B., 01-2441 at pp. 7-10, 805 So.2d at 163-165 (emphasis added).
Both a permanent plan and a case plan contain elements other than a specific placement. See and compare La. Ch.C. arts. 673, 675(B), 681, 684, 700, 702, & 710. For example, a case plan, which may involve multiple interim placements prior to a permanent one, would also outline parental obligations, and detail the efforts by the custodian to achieve the designated permanent plan for the child. La. Ch.C. art. 673. The goal of the permanent plan may be reunification with the parents, adoption, or appointment of a permanent private or public legal guardian. La. Ch.C. arts. 603(15), 702, & 710. If the juvenile court disapproves the overall case plan, or a specific placement, the court may order revision of the case plan. La. Ch.C. art. 700 A(2); see Children’s Code, Chapter 15, 2001 Authors’ Notes, Permanency Hearing (“Article 700 empowers the court to order the department to revise the plan if after the review hearing, the court finds that the proposed goal is inappropriate.”). If the juvenile court eventually determines that the Department of Social Services is “not making reasonable efforts to comply with [the] permanency planning requirements, the court’s recourse under La. Ch.C. art. 712” includes ordering “the agency to show cause why a contempt order should not issue-” State ex rel. L.C.B., 01-2441 at p. 11, 805 So.2d at 165. The court, on its own motion, may also modify the disposi-tional option previously chosen, including a change of custody. La. Ch.C. arts. 681, 714, & 716.
Louisiana Children’s Code article 319 provides general authority for a contempt proceeding. Title 15 of the Code, Chapter 2. Contempt, article 1503, allows “each juvenile court to enforce its orders and maintain proper court decorum.” A contempt may be direct or constructive. See La. Ch.C. arts. 1505 & 1507. A constructive contempt includes: “Willful disobedience of any lawful | (¿judgment, order, mandate, writ, or process of court.” Under La. Ch.C. art. 1509 B, “an adult person charged with contempt to perform ... may be imprisoned until he performs it and in such a case this shall be specified in the court’s order.” Article 1509 also contains specific provisions governing attorneys and parents. See La. Ch.C. art. 1509 C & E. For other adults “adjudged guilty of contempt of court in connection with a juvenile proceeding,” a court may impose “a fine of not more than five hundred dollars or by imprisonment for not more than six months, or both.” La. Ch.C. art. 1509 D.
An “appellate court reviewing [a] conviction of criminal contempt ... must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant willfully disobeyed a lawful order of the court.” State ex rel. R.J.S., 493 So.2d 1199, 1203 (La.1986). “Willful disobedience of a court order requires a consciousness of the duty to obey the order and an intent to disregard that duty.” Id. In other words, the person adjudged guilty must have been aware of an order to act or not act, which he could have reason *48 ably discerned was directed to him, and yet, he intentionally disobeyed the order. See R.J.S., 493 So.2d at 1203 n. 9 (A clear order should be directed to a specific entity so that the named party will be alerted to the need to comply or accept the consequences.); State ex rel. Duffy & Behan v. Civil District Court for Parish of Orleans, 112 La. 182, 36 So. 315, 319 (1904).
“[W]hen a specific remedy is provided by the code, it should be followed rather than disregarded through a mere change in the form of proceedings.” Billiot v. Billiot, 01-1298, p. 9 (La.1/25/02), 805 So.2d 1170, 1176. A contempt proceeding should not become a substitute for an available legal remedy. See id.
| ^CORRECTNESS OF CONTEMPT JUDGMENT
 It is apparent from the record that the court was, at all times, trying to do what it believed was best for M.A.A., and was frustrated by the child’s removal from a program in which the child appeared to be cooperative and progressing. Nevertheless, a finding of contempt must be based on an intentional disobedience of a clear and valid court order or judgment. See State ex rel. R.J.S., 493 So.2d at 1203 n. 9.
Although the contempt judgment speaks of a failure to follow a case plan, the act at issue on the rule to show cause, and at the heart of the contempt judgment, was only one aspect of the case plan: the transfer of M.A.A. from Longfellow to New Directions. See La. Ch.C. arts. 672, et seq. & 687, et seq. From our review of the applicable law, the court below had the authority, and correctly held a hearing, to review the appropriateness of the case plan, including the placement at Longfellow, and subsequently at New Directions. See La. Ch.C. arts. 692, 700, & 702. After disapproving the New Directions placement, the court could have chosen to order OCS to revise a plan, to enter orders necessary to achieve a child’s permanent plan, and even to modify or revoke the disposition to state custody. La. Ch.C. arts. 700, 702, 710, & 716. If the ordered party refused to revise the plan, or failed to make any reasonable efforts to comply with the goals of the permanency planning, article 712 sanctions would be available. However, the court could not choose or order the placement to Longfellow by judgment, or through a substituted proceeding for contempt. See La. Ch.C. art. 672(A); State ex rel. L.C.B., 01-2441 at pp. 6-11, 805 So.2d at 162-65; Billiot, 01-1298 at p. 9, 805 So.2d at 1176.
On the issue of notice, or a direct definable order to specifically named parties, the record shows that only Ms. Kenney-Go-mez was present at the February hearing, and the record contains no evidence of service of the March judgment, or lT1for that matter, the April judgment, on any of the three employees. In addition, similar to our finding on the prior review of the April judgment, the March judgment failed to specifically grant any relief, or directly order any of the three employees, or OCS, to do, or to refrain from, a discernable, particular act. See State ex rel. R.J.S., 493 So.2d at 1203 n. 9; State ex rel. Duffy & Behan, 36 So. at 319 (need for definite order to specifically named persons). The March judgment merely approved the Longfellow placement, in the same way the April judgment simply disapproved the placement at New Directions.
For these reasons, we find that a rational trier of fact could not have concluded, beyond a reasonable doubt, that the defendants willingly disobeyed a lawful order of the court. The judgment of contempt is reversed.
*49 REVERSED.
DOWNING, J., concurs.

. Ms. Lewis’ and Mr. Pooley's names are spelled differently at various places in the record. We have chosen the spelling used in the judgment appealed.

. Under the law of the case doctrine, the denial of a writ application for supervisory review of an interlocutory judgment does not bar reconsideration on appeal of a final judgment, or a different conclusion on the previously reviewed issue. McIntyre v. St. Tammany Parish Sheriff, 02-0700, p. 6 (La.App. 1 Cir. 3/28/03), 844 So.2d 304, 308.